Welcome. First case up is Thompson v. Secretary, Mr. Einertsen. Thank you, Your Honors. May it please the Court, in February of 2018, the United States Supreme Court in Digital Realty Trust v. Summers, in a unanimous holding, which is unusual, found when Congress includes particular language in one section of a statute, but omits it in another, the Court presumes that Congress intended a difference in meaning of the statute, and it's citing Lockhart v. United States, a 2014 Supreme Court case. That is the basic premise. Here today, we have a district court that took the private sector aspects of the Age Discrimination of Employment Act and applied it to the Federal Employee 633A section, and that was in error. Recently, and the government has just submitted this week, a document in opposition to a motion for certiorari by the Solicitor General, and in that petition, the court — the solicitor, on behalf of the government, recognized that the ADEA is based on the Federal Employee sections of Title VII, and in doing so, specifically said in page 8 of their — of their moving papers that it is the position of the United States that, in fact, lateral transfers are adverse employment actions. And all of this — The problem I see for you, though, even with that, and that's a helpful development for you, is even if you assume you're right, and the government's now said it's going to be a standard that's — the standard will be different here, and a transfer, in theory, can be an adverse action for your purposes, and also — that also, your next, probably, argument is going to be that the but-for test is also not applicable here. So, assuming both those are true, the district court, in a thorough 30-plus page order, indicated whatever. I find, as the finder of fact, that the decision here to transfer your client was not motivated by age. Why should we overturn that fact-finding by the district court? Sure. Thank you, Your Honor. So, at page 27 of the district court's ruling, it is clear there's errors throughout in terms of even fact. What part of page 27 are you referring to? I'm looking at paragraph 19, second sentence. First, neither Ridley nor Hogan knew plaintiff's age or retirement eligibility when they selected Thompson for transfer. Your Honor, as we cited at Appendix Volume 6, which is part of the transcript, and this is Mr. Hogan's testimony, at page 170, Mr. Hogan knew Ms. Thompson, her age, generally, and that she was retirement eligible. That's not disputed. What did Hogan say specifically? At page 170. Question. Now, you assume that Ms. Valerie Thompson, and I'm talking now in 2013, she was about your age or so, correct? Answer. That's what I figured. Yes. Question. Right. All right. So, generally speaking, dealing with Ms. Thompson, I don't think you dispute in 2013 you had a sense that she was retirement eligible, right? Answer. If I had thought of it that way, I would have come to that conclusion. Yes. But he didn't say he thought of it that way, and he was talking about what he assumed, not what he knew. Well, I think he — and we have the time and place list that also monitored the hire date. They knew she was hired in 1989, and that's undisputed. Mr. — Deputy Director Whitley's testimony at Appendix 5 at page 211, he knew Ms. Thompson was retirement eligible in her age because he started working at the Naval Investigative — Criminal Investigative Service at the same time as Ms. Thompson. And all right. Question. First line. And on the date when you selected her for that, you knew she was retirement eligible at that time, correct? You know, you're leaving out the next sentence after when you quoted or paraphrased it. Ridley testified that he didn't know Thompson's age or retirement eligibility, but would have assumed plaintiff was a year or two younger than him, which says the judge realized that Ridley knew that the plaintiff was a year — or assumed the plaintiff was a year or two younger than him. He surely knew his own age, so he knew or assumed he knew how old she was. The judge took that into consideration. Well, I don't think that's — so with all due respect, Your Honor, the first sentence where he says they don't know and then some assumptions doesn't go to demonstrating that the court took this into account. And based on — The court just said it and ignored it. I — well, I think the entirety of the opinion on the transfer, the discharge, the constructive discharge, all is based on a constrictive view. At the very end, he does mention, well, if you assume this or you assume that. But I don't think the court could read into the opinion to say that the initial premise, that we have a very restricted view of a federal employee's protections under the ADA, EA, is not being considered by the court. The problem is that even if he knew the age, even if — let's say the plaintiff was born on the same day, the same year as the defendant, and the defendant knew it. Therefore, the defendant, every day of his life, after he found that fact out, knew how old she was to the day. That doesn't mean that his action was because of her age. And that's the critical fact finding — Of course. — to which the clearly erroneous standard applies. And not only that, but it's enhanced clearly erroneous because it was based on demeanor and credibility decisions. Well, and of course, I'm not arguing in any of these papers that the standard is, well, Ms. Thompson happens to be of a certain age. Therefore, there's, per se, discrimination at all. What we're saying is, that's a clearly erroneous fact when the court says — and I appreciate what Your Honor is saying about the next sentence — but he says they did not know her age. They did not know she was retirement eligible. Well, they did know that. And that was something they considered. And I think the record is replete with — based on what finding of the district court. That's the critical issue. And the district court said they didn't consider it, take it into account, that the decision had nothing to do with it. And there is strong corroborating evidence that it didn't. They needed to transfer somebody. What the district court did, though, is look at those facts in light of a constricted view of the Federal Employees Protection. So if he was viewing it — I don't — Go ahead. I don't even think that. At the last page of his decision, he's — the district court says that age was not even a factor, which, you know, that's your more lenient causation, not the but-for causation that you don't like. That's correct. He says that. And he also says — we are cited at page 27 — that he doesn't believe Ridley or Hogan knew her age or that she was retirement eligible. And so if you look at the totality of the facts — I don't think — like, the Chief, he says that, but then what the judge was thinking was, although he would have known it, and then I'm quoting from page 28 on the top line, had he considered the issue. In other words, the age and retirement eligibility were not in their mind when they made this decision. And that's what they said. But the circumstantial evidence that was presented was they looked at — if you look at that cohort that was transferred out of that southeast field office, they were all retirement eligible. We have evidence of the — See, you're presenting evidence from which the judge could have inferred that it was based on age. Fine. If you'd won, they'd be making a counter-argument and we'd be agreeing with you. But you didn't. And the problem is — the act, one big difference — is it's a bench trial. And he gets to make the inferences and he gets to choose between competing evidence. And it just doesn't look — I'm not left with a firm impression, decision that he erred. I mean, why is it not just error but clear error to determine that it wasn't based on age? I mean, there's evidence both ways. Your Honor, there is evidence. But all of this is in the context of an erroneous view of the law. OK? And he makes that clear throughout his position on the standard for a Federal employee. What erroneous view? That a lateral transfer is not an adverse — That's beside the point. He didn't — he said that discrimination did not play a role. So it doesn't matter about adverse action. It's as though he said there are three independently adequate alternative reasons. One is that a transfer is not an adverse employment action. But even if it were, discrimination played no part in their subjective determinations and decision-making. I've heard them testify. I've considered all the evidence. I believe that they are credible. I believe that some of the rumor mill evidence is not credible. That's my basis for determination. And do you want to hear three? You know, it's the same. He went down. On page 26, paragraph 16, he says, even assuming arguendo, she suffered an adverse action. And then on page 27, even assuming that the Buck-Thor standard does not apply, plaintiff has failed to show that her age was a factor, and the challenge personnel action. You couldn't be much clearer than that, could you? I appreciate that. And I know that that is in — and I think what I — and that's why I jumped to page 27, 19, where it's in the context of an express sentence — and I know there's a sentence following it — Ridley and Hogan, neither of them knew her age or retirement eligibility. And that, I think, indicates a clearly erroneous fact that's set forth in assumptions he's making. Except he then said Britley did. And Hogan — But he said he thought she was his age, and he was 50, so he would have known. Thank you. Thank you, Your Honor. Ms. Karinas, if you'd like to convince us we're mistaken, please proceed. Beg your pardon? I said, if you'd like to convince us we're mistaken, proceed. Thank you, Your Honor. Jennifer Karinas for the Secretary. May it please the Court. This Court should decide this case on the very fact-based ground that the District Court found, that Ms. Thompson failed to show that any — that age discrimination played any role in the decision to transfer her. And as the Court's been discussing, there is ample evidence in the record to support the fact findings and conclusions of law that Ridley and Hogan contemporaneously, at the time the decision was made, didn't know her age. If they had thought about it, they might have realized that. They could have deduced that. Mr. Hogan was provided with documents showing dates and ages and asked to calculate the math and said, okay, yes, I could have done the math at the time, but I didn't. And the Court credited their testimony and concluded that they did not know contemporaneously. And the Court also made a specific adverse credibility finding against Ms. Thompson. Regarding the Solicitor General's filing, I would just point out that's not a merits brief. It is, as Mr. Hendrickson said, it's an opposition to a petition for cert. And the Solicitor General urges the Court not to take the case because it can be affirmed like this one on a fact-based ground, but does say in a future case it intends — it is the position of the United States that under Title VII, the Federal Employee Version, that a lateral transfer is a personal action within the meaning of that statute. But again, this Court can and should affirm on the very fact-based ground that's been discussed here today. I mean, it just about has to be an adverse employment action from Jacksonville to Maryland. Pack up everybody, move everything up there. Move away from your friends and family. They've given you eight years. Time's up. And hope your husband can call you or do some FaceTime while he's at his job. That has to be adverse employment action, doesn't it? Well, Your Honor, I mean, under this circuit's law, under binding precedent Doe v. DeKalb County, they've said that a purely lateral transfer is not adverse. And I know that's a public-private sector case. Well, not only that, but wasn't that in the same county? It was. So it's true that there are a long move like that. But again, this is NCIS. This is an employment to sign a mobility agreement. I understand. And that's a different defense or issue, I would think. I just, you know, suppose they said, oops, need you to go to Japan. And oh, by the way, your housing allowance is not going to enable you to have anybody. It's a pull-out sofa or something like that. That's all you can do. That's got to be. There has to be a point in which a transfer is an adverse employment action. I agree, Your Honor. And I think this Court has tried to frame what that means. But I don't think we need to get bogged down in whether or not it was an adverse action, especially in light of the Solicitor General's filing. And I also don't think that, as the Court has pointed out, we need to go down the road of whether it was a but-for causation or a motivating factor, although the Trask case, as amplified in the Babb case that we filed in a 28-J letter, says that it is a but-for causation standard. But even as the District Court found, even under a motivating factor standard, the overwhelming evidence at trial showed the age played absolutely no role in the decision to transfer Ms. Thompson. It was a new policy. It was a facially neutral policy where NCIS said, we're shorthanded. We have a hiring freeze. We have a lot of agents who have been sitting in one place for a long time in desirable locations like Jacksonville. So folks coming back from overseas can't bid on those. We're going to revamp our mobility policy to make it very clear to folks, we need to move you for operational reasons. And it made sense that people with experience like Ms. Thompson, they also were at the top of the time and place list, that those folks seemed like the most reasonable choice to transfer to a critical billet like the fraud billet, where they needed someone with experience in complicated criminal cases. And CEPHO was overstaffed, way overstaffed. Pardon me? CEPHO was way overstaffed. CEPHO was overstaffed as well. A dozen and a half or something like that. Too many? There was a Staff Assist visit where the person who ran that, Mr. Howard, determined that up to 18 billets should be either eliminated or realigned somewhere else within NCIS. And so Mr. Hogan didn't necessarily say, I'm going to get 18 folks out of there in one year. It's almost impossible to do that. But it did make sense, even though they're different, they're different processes, transfers versus downsizing, which NCIS does almost every year with various offices. It made sense that there was some overlap there to say, well, why don't we try to kill two birds with one stone? Let's transfer some of the people who are high in the tip list in the CEPHO office that needs to be downsized. I understand they can do a mobility policy if they want to, and they can run it in any non-discriminatory fashion that they wish. But what's the theory behind that? It would seem to me, I'm just curious, this doesn't play into the legal issues, that the number of folks who would be willing to take this as a career assignment would be diminished by the fact that you told them, look, you've got to sign here and agree that every couple of years we can transfer you somewhere else. Your Honor, I'm not sure I understood your question. I apologize. Why do they have a mobility policy? NCIS, there was a lot of testimony at trial about that, that they needed agents who were well-rounded. They didn't want people to specialize. Even though Ms. Thompson was an expert in her field, they didn't want agents to specialize. They want to be able to move people around, be flexible. They're a very lean agency. It's not like the FBI. They don't have a lot of agents. There are some offices, they have just one. So they wanted to make sure that they had people they could move around. And especially after 2011, when Director Kluge took over and recognized that the fraud program had been really neglected after 9-11, that he wanted to rebuild that. They didn't have a bench of experienced people in the fraud program. And so the mobility policy makes sense. This is why they have it. So they can say, this is an operational need. We're no longer willing to tolerate mission failure by not filling these critical billets. We're going to use this policy to fill them. And that's exactly what it was designed for. We don't have any questions. If there are no further questions, thank you, Your Honor. Thank you. Mr. Hendrickson, you've got your three minutes. Briefly. Your Honors, page 27, paragraph 18. The Court talks about, again, and I'm back to his application of an erroneous legal standard. Plaintiff has not produced any contemporaneous evidence that Ridley and Hogan expressed discriminatory intent. I think the opinion and order after trial is replete with the application of the wrong law to the facts in the case. When Your Honor talks also about, well, wasn't this, I mean, my client for 25 years traveled to do her job and was willing to do this job, except when you had the review at the Southeast Field Office, Ms. Thompson's position wasn't mentioned. I thought she was exempted for eight years. She had been, but they did an evaluation of the particular billet's position. I'm talking about she traveled for 25 years. Was that, she'd been for 33 years. She traveled throughout. She did have the exemption for a period of time, although she did ship duty during that period of time, volunteered for it to be on a ship and was not at home for a deployment. And so I guess the issue here is they had two younger males who had procurement fraud experience who applied for the Patuxent River, Maryland position. My client knew this was a, you know, something that went on with the work there, and the Court ignored the fact that they were two additional. My recollection, it did not ignore those, but the Court addressed those, and my recollection is they had had no time in service. In effect, they had come shortly before, and furthermore, they weren't experienced. Did not the Court say that? Well, the actual experience was they were endorsed, and so the Court . . . Did the Court not say what I just said? They didn't. The Court did address the . . . 26 paragraph 14. The Court addressed that they were other applicants for the position. Those very two applicants. Yes, and the Court did deal with that, and again, our argument goes to, aside from what I raised on the clearly erroneous fact about the lack of knowledge by Ridley and Hogan of Ms. Thompson's and retirement eligibility, it goes to the entire context of the ruling is applying law that does not apply to a Federal employee. The law that you say he misapplied doesn't have anything to do with that issue. It does . . . Has nothing to do with discrimination or not. It does have to do with the issue of discrimination in that the standard of personnel action, he says, does not rise to the level of adverse action, and we're arguing the 633A does. So, his . . . Yeah, but that, the adverse action issue, as the Chief pointed out, is irrelevant to the holding that there was no discrimination in the first place. If you find no discrimination because the acts you say could be discriminatory are limited because of your application of a narrow view or an incorrect view of the law on discrimination against a Federal employee versus a private sector employee, then the Court would necessarily find certain acts nondiscriminatory, and that's what we're maybe not artfully . . . Nondiscriminatory would be discriminatory for a Federal employee under the Federal employee section of the ADEA. Thank you, counsel. Thank you very much, Your Honor. We'll take that case under consideration. The next case up is High Point Tower v. Commissioner.